UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| CARS OF SHELBYVILLE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 12-054-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FIRST 1 FINANCIAL CORP., | ) | |
| | ) | |
| Defendant and Third-Party | ) | |
| Plaintiff. | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| DONNIE ETHINGTON, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Following a bench trial, a judgment was entered in favor of Defendant and Third-Party Plaintiff First 1 Financial Corporation ("First 1"). [Record Nos. 110 and 111] This matter is currently pending for consideration of Third-Party Defendant Donnie Ethington's ("Ethington") motion for relief under Rule 60(b)(6) of the Federal Rules of Civil Procedure. [Record No. 150] Ethington presents a number of arguments that could be raised on direct appeal or in a legal malpractice action. However, Rule 60(b)(6) is not the proper avenue for the relief ought. As a result, his motion will be denied.

**I.**

On May 29, 2008, Plaintiff Cars of Shelbyville, Inc. ("CSI"), a used car dealership located in Shelbyville, Kentucky, entered a "Dealer Agreement" with First 1, a sub-prime

lending company based in Massachusetts and operating in twenty-five states including Kentucky. [Record Nos. 104 and 150-10] According to the Dealer Agreement, CSI would offer First 1 the opportunity to finance loans for automobiles sold by CSI. [Record No. 150-10, p. 2] First 1 could then "approve, accept, and agree in total or in part," to finance the loan "with such terms and amounts acceptable by [CSI]." *Id.* For those loans that First 1 agreed to finance, CSI would convey to First 1 all of its rights to payment on the contract and to the property financed by the loan. *Id.* However, CSI remained responsible for performance on the finance agreements. *Id.* In other words, if an automobile purchaser defaulted on one of the loans financed by First 1, the Dealer Agreement obligated CSI to repay the loan to First 1. The Dealer Agreement also contemplates First 1 establishing an individual dealer account for CSI. *Id.*

The payment arrangement is explained in paragraphs 7 and 8 of the agreement:

> 7.     In the event the DEALER [CSI] does not fund any loan for a period of sixty days (60 days), the account will become INACTIVE. If the account is still inactive when all payments are received for the active loan(s) and First 1 has received all payments due, the remainder will be paid in a lump sum to the dealer. However, in the event that the payment history for the DEALER account demonstrates a positive cash flow on the account then monthly payments will be made to the DEALER. First 1 reserves the right to hold a minimum of 25% of the amount owed against potential losses – unless historical losses are higher – and pay the rest to the dealer monthly.

> 8.     If the DEALER account holds a negative balance that account reserves the right to 19.79 APR interest on a daily balance until it is brought current.

*Id.* at p. 3. Ethington's name appears twice at the bottom of the Agreement as an authorized individual for CSI and as an individual guarantor. *Id.*

On July 12, 2012, the plaintiff filed a Complaint in Shelby Circuit Court, claiming that First 1 breached the Dealer Agreement, breached its duty of good faith and fair dealing,

committed fraud, and breached its duty to notify CSI that third-parties who purchased vehicles from CSI had defaulted. [Record No. 1-1] On August 10, 2012, First 1 removed the case to this Court. [Record No. 1] Along with its Answer, First 1 also filed a Counterclaim against CSI and a Third-Party Complaint against Ethington. [Record Nos. 12 and 13] First 1 asserted claims against CSI and Ethington for breach of the Dealer Agreement and unjust enrichment as well as a claim for breach of guaranty against Ethington. [Record No. 14]

Ethington subsequently filed an Answer along with a Counterclaim against First 1, alleging claims similar to those brought by CSI in the original Complaint. [Record No. 25] Both the original Complaint and Ethington's Counterclaim were filed by Attorney Kurt K. Mohnsam.[1] [Record Nos. 1-1 and 25]

On June 24, 2013, First 1 took Ethington's deposition. [Record No. 56-1] During the deposition, an exchange occurred between Ethington and First 1's attorney that Ethington now believes was relevant to his competence to testify at trial.

> Q:    Okay. Are you taking any medications that might interfere with your ability to understand my questions?
> A:    I take about ten pills a day, but I don't know what they are.
> Q:    Okay. Would any of them –
> A:    I know I take one for memory because that one costs me $15 a day.
> Q:    Which pill is that?
> A:    Huh?
> Q:    Which pill is that?
> A:    It's a little – I don't know.  It's blue – it's blue and yellow, half and half.
> Q:    And why do you take that?
> A:    For memory.
> Q:    What type of memory issue?
> A:    It's like I can remember what was going on, say, ten years ago, but – but not like, say, when I'm trying to sell a car.  If I don't write

---

1       Stanley M. Billingsley is also listed as counsel on the original Complaint. [Record No. 1-1]

> everything down just like that and they come back in the next day or –
> my son says let's call them and I – and I can't remember anything
> about it.

*Id.* at p. 4.  When First 1's counsel presented a copy of the Counterclaim against First 1, Ethington testified that he did not recognize the document.  *Id.* at p. 11.  And when asked what facts he had to support specific allegations in his Counterclaim, Ethington responded several times, "I don't know anything about it."  *Id.*

Based on Ethington's testimony during the deposition, including his admitted memory problems, Mohnsam filed a pre-trial motion to strike the deposition testimony as incompetent.  [Record No. 52]  However, the Court denied this motion.  [Record No. 75]

Beginning January 21, 2014, this Court conducted a four-day bench trial on all claims.  During the trial, Bryan Perry testified that he formed CSI with Ethington and Ethington's brother, Jake Ethington.  [Record No. 89, pp. 50-51]  On direct examination, Perry explained that, when he began discussions with First 1 about entering an agreement:

> [w]e talked about the dealer agreement and what you would have to have.
> And at the time I sold my property in Lexington and different things, and the
> main criteria you had to have was a – you had to have land purchased – or a
> home or something, and I didn't qualify so I had to have Mr. Ethington sign
> with us since he owned land there.

> *Id.* at pp. 54-55.

Perry then identified the signatures on the Dealer Agreement as Donnie Ethington's signatures.  *Id.* at pp. 56-57.  When presented with a copy of the Dealer Agreement during his direct examination, Donnie Ethington gave the following testimony:

> Q:    There are two signatures there saying Donnie Ethington?
> A:    Yes, they do.
> Q:    Are those your signatures?
> A:    Yeah, I think so. It looks like them.
> Q:    Do you remember signing?

-4-

A:     Yes, uh-huh. I signed.

Q:     Okay. Do you remember anything about the facts that led up to signing this agreement?  Do you remember how this agreement came about, how it came about that you signed this document?

A:     No, I don't remember.

…

Q:     Okay.  Mr. Ethington, tell me what you remember about the business elationship between Cars of Shelbyville and First 1 Financial.

A:     I – I don't really remember a whole – I mean, you know, I have trouble remembering.  I have a tumor.

Q:     Do you take medication for your memory?

A:     Yes.

[Record No. 90, pp. 18-19]  On cross-examination, Ethington testified that he was not involved in the day-to-day operations of CSI, that he did not conduct sales on their behalf, and that he never reviewed their financial statements or any documents provided by First 1. *Id.* at pp. 20-21.  When asked, "[a]nd you're not aware of seeking any damages from First 1 in this case, are you?" Ethington replied, "No, ma'am."  *Id.* at p. 21.

On March 10, 2014, the Court issued its Findings of Fact and Conclusions of Law. [Record No. 104]  The Court found that CSI had breached the Dealer Agreement with First 1.  *Id.* at p. 45.  As a result, Ethington was also liable for breach of the guaranty agreement. *Id.*  Finally, the Court dismissed all of CSI's and Ethington's claims against First 1.  *Id.* at p. 46.

On April 21, 2014, the Court entered a judgment which was subsequently amended on April 24, 2014.  [Record Nos. 110 and 111]  The amended judgment ordered CSI and Ethington to pay First 1 $228,588.78 in damages, along with pre-judgment and post-judgment interest, as well as $340,000.00 in attorney's fees pursuant to the parties' agreement.  [Record No. 111]  Thereafter, on May 18, 2015, First 1 applied for and received several orders of garnishment for bank accounts held by Ethington.  [Record Nos. 114 to

141]  On August 31, 2015, Ethington filed this motion for relief from the amended judgment under Rule 60(b)(6) of the Federal Rules of Civil Procedure.  [Record No. 150]

## II.

Federal Rule of Civil Procedure 60(b) allows a party to seek relief from a final judgment for the following reasons:

(1)    mistake, inadvertence, surprise, or excusable neglect;

(2)    newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)    fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4)    the judgment is void;

(5)    the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)    any other reason that justifies relief.

Even though Rule 60(b) gives district courts broad discretion to grant relief from judgments, relief is "circumscribed by public policy favoring finality of judgments and termination of litigation."  *Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Waifersong Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)).  Because the first five subsections of Rule 60(b) cover "almost every conceivable ground for relief," courts should exercise caution when applying Rule 60(b)(6).  *Blue Diamond*, 294 F.3d at 524 (internal quotation marks and citation omitted).  Accordingly, Rule 60(b)(6) motions should only be granted "in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule."  *Blue Diamond*, 249 F.3d at 524 (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)).  *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988).  "In addition to the requirement of exceptional

circumstances, a Rule 60(b)(6) movant must also satisfy three equitable factors required for Rule 55 relief: (1) lack of prejudice to the plaintiff; (2) a meritorious defense; and (3) whether the defendant's culpable conduct led to the judgment." *Export-Import Bank of U.S. v. Advanced Polymer Sciences, Inc.*, 604 F.3d 242, 247 (6th Cir. 2010).

Subsection (c) explains that all Rule 60(b) motions "must be made within a reasonable time," and motions based on Rule 60(b)(1), (2), or (3) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. Pro. 60(c). Whether the movant filed his or her 60(b)(6) motion within a reasonable amount of time "depends on the facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief." *Olle*, 910 F.2d at 365.

### III.

Ethington contends that the Court should vacate the amended judgment because: (i) he either did not or was not authorized to sign the Dealer Agreement; (ii) the guaranty is unenforceable because it fails to meet the requirements of Kentucky Revised Statutes ("K.R.S.") § 371.065; (iii) he was not competent to testify at trial, and (iv) he received deficient legal representation because his counsel was conflicted, failed to obtain informed consent for the conflict, failed to meaningfully participate in the suit on his behalf, and failed to notify him that his Social Security benefits were not subject to garnishment. [Record No. 150-1] Ethington's current attorney claims that Ethington's family did not discover that a judgment had been entered against him until First 1 began to garnish his bank accounts in May of 2015, thereby excusing the delay in filing this motion for relief.

As discussed below, the Court considered and disposed of Ethington's first three arguments regarding the validity of the guaranty and his competency to testify in the findings of fact and conclusions of law previously entered. [Record No. 104] Ethington's attempt to re-litigate those issues is neither "exceptional" nor "extraordinary" as required under Rule 60(b)(6). Rather, the appellate process was designed for that purpose. Additionally, Ethington has not proven that his attorneys' conduct was sufficiently egregious to merit relief under Rule 60(b)(6).

### A. Timeliness

First 1 contends that all of Ethington's claims fall under either Rule 60(b)(1) or 60(b)(2). [Record No. 152, pp. 5-13] Thus, it asserts that Rule 60(b)(6) is inapplicable under *Liljeberg*, 486 U.S. at 863, and *Blue Diamond*, 249 F.3d at 524. According to First 1, Rule 60(c) required Ethington to file his motion within one year of the judgment. And because Ethington filed this motion over sixteen months after entry of the amended judgment, his motion is untimely. However, the grounds for relief Ethington asserts do not fall squarely under Rule 60(b)(1) or (2). Further, the Court concludes that Ethington filed his motion within a reasonable time as required by Rule 60(b)(6).

Ethington's claim that his attorneys were conflicted underlies all of his arguments. Absent this alleged conflict, he contends that his counsel would have challenged the validity of his signature, the validity of the guaranty, and his competency to testify. For support, Ethington offers his wife's affidavit, corporate filings from the Kentucky Secretary of State's website, and documents already incorporated as part of the record of this proceeding. [Record Nos. 150-2 to 150-22] Ethington does not appear to offer any of this proof as "newly discovered evidence" that could not have been discovered prior to trial. *See* Fed. R.

-8-

Civ. Pro. 60(b)(2).  Instead, he offers the documents as evidence that his counsel knew or should have known that he was incompetent and that the Dealer Agreement was invalid.  In short, Ethington's motion does not appear to fall under Rule 60(b)(2).

According to First 1, Ethington's arguments are also premised on the idea that his counsel committed "excusable neglect" and that the Court based its decision on a "mistake of law."  [Record No. 152, p. 8]  For support, it compares this matter to two cases from the Sixth Circuit.  However, both are distinguishable.  In *McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 593 (6th Cir. 2002), the plaintiff's Rule 60(b)(6) motion specifically cited "mistake, inadvertence, and excusable neglect" as grounds for relief.  Accordingly, the Sixth Circuit found that the district court erred in applying Rule 60(b)(6) instead of 60(b)(1).  *Id.* at 592.

In contrast, Ethington does not characterize his attorney's conduct as "excusable neglect."  Rather, he alleges that his counsel committed several forms of inexcusable attorney misconduct.  [Record No. 150-1]  On several occasions, the Sixth Circuit has applied Rule 60(b)(6) to motions for relief based on attorney misconduct.  *See Valvoline Instant Oil Change Franchising, Inc. v. Autocare Assocs., Inc.*, No. 98-5041, 1999 WL 98590 (6th Cir. Jan. 26, 1999) ("Hence, in this particular case, defendants' attorney's dishonesty may serve as grounds for relief under Rule 60(b)(6)."); *Travelers Cas. and Sur. Co. of Am. v. J.O.A. Constr. Co., Inc.*, 479 F. App'x 684, 696 (6th Cir. 2012) (Attorney's non-disclosure and failure to oppose the plaintiff's motion for summary judgment "did not rise to the level of misconduct" necessary for relief under Rule 60(b)(6).).

First 1 cites *Barrier v. Beaver*, 712 F.2d 231, 234 (6th Cir. 1983), for the proposition that "claims for relief on the basis of mistake of law are analyzed under subsection (b)(1)."

[Record No. 152, p. 6]  Like *McCurry*, the petitioner in *Barrier* explicitly relied on both Rule 60(b)(1) and Rule 60(b)(6) in his motion for reconsideration.  *Barrier*, 712 F.2d at 234.  In addressing the Rule 60(b) issues, the Sixth Circuit merely quoted the district court's opinion.  The district court explained that, "[t]here is authority for the view that 'mistake' as used in Rule 60(b)(1) encompasses any type of mistake or error on the part of the court, including judicial mistake as to the applicable law."  *Id.* at 234.  However, the district court went on to conclude that "there may be another basis to constitute 'other reasons justifying relief' under Rule 60(b)(6) in this situation."  *Id.* at 235.  Ultimately, the Sixth Circuit's opinion in *Barrier* does not establish a bright line rule for determining which subsection of 60(b) should apply when a litigant alleges the trial court has reached the wrong conclusion.

Because Ethington's motion does not fall under Rule 60(b)(1), (2), or (3), he was required to file the motion within a "reasonable time."  Fed. R. Civ. Pro. 60(c)(1).  The Court concludes that sixteen months is reasonable because First 1 did not begin taking steps to enforce the judgment until over a year after its entry.

### B.     The Validity of Ethington's Signatures on the Dealer Agreement

Ethington argues that his signature on the Dealer Agreement was not effective to bind CSI or him because he lacked the "authority or capacity" to enter the agreement on CSI's behalf.  [Record No. 50-1, p. 18]  However, Ethington offers little factual or legal support for this argument.  "It is well settled that a corporation . . . can only act through its agents." *BancInsure, Inc. v. U.K. Bancorporation Inc./United Ky. Bank of Pendleton Cnty., Inc.*, 830 F. Supp. 2d 294, 301 (E.D. Ky. Nov. 16, 2011) (quoting *Caretenders, Inc. v. Commonwealth*, 821 S.W.2d 83, 86 (Ky. 1991)).  When a corporation holds out an agent as authorized to act on its behalf, the corporation is bound by that agent's actions.  *See Enterprise Foundry &*

*Mach. Works v. Miners' Elkhorn Coal Co.*, 45 S.W.2d 470, 473 (Ky. 1931). Ethington asserts that he had "no ownership or managerial relationship with CSI" and, therefore, CSI could not have authorized him to sign the Dealer Agreement. [Record No. 150-1, p. 18]

Ethington asserts that he did not list his "title" in the appropriate blank next to his signature line on the Dealer Agreement. *Id.* He also attaches several corporate documents filed by CSI with the Kentucky Secretary of State that do not mention him by name. [Record Nos. 150-6, -7, and -8] Ethington's argument presumes that only owners, officers, or directors of a corporation may bind the corporation, but he provides no support for that position. The only authorities cited in support of this argument are factually distinguishable. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Kean-Argovitz Resorts*, 383 F.3d 512 (6th Cir. 2004), involved the enforceability of an arbitration provision in an agreement between an Indian tribe and a casino. The case did not involve any allegations regarding signatory authority, and the quote Ethington cites is not its holding.

*Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262 (4th Cir. 1993), is also distinguishable. In *Gray*, the trial court granted summary judgment against Wilson and then denied a Rule 60(b) motion to vacate, even though a third party admitted that she signed Wilson's name to the loan agreement without obtaining his authorization. *Id.* at 264. The Fourth Circuit remanded the case with instructions to vacate the judgment. *Id.* at 266-67. Besides arguing that the two signatures on the Dealer Agreement do not match, Ethington presents no proof that someone else signed his name without his approval.

The evidence presented at trial also contradicts Ethington's arguments. During trial, Bryan Perry and Ethington testified to the authenticity of his signatures. [Record Nos. 89 and 90] The Dealer Agreement, including the signature page, was admitted as an exhibit at

trial and considered by the Court in reaching its conclusions. [Record No. 89, p. 56; Record No. 104, pp. 5-6]

Ethington failed to present any proof at trial challenging the authenticity of his signatures or his authority to sign. However, he now argues that his trial counsel's dual representation of CSI and him created a conflict. [Record No. 150-1] According to Ethington, that conflict caused his attorney to argue that the Dealer Agreement was valid in hopes of succeeding on CSI's original breach of contract claim. *Id.* However, the Supreme Court has held that a client must accept the consequences of his attorney's acts or omissions where he has freely chosen the attorney as his representative. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 396 (1993). Relying on this holding, in *McCurry*, 298 F.3d at 596, the Sixth Circuit reversed a trial court's grant of a Rule 60(b)(6) motion where the grounds for relief involved "straightforward claims of attorney error and strategic miscalculation." According to the *McCurry* Court, such claims do not constitute "exceptional [or] extraordinary circumstances." *Id.*

By promoting the Dealer Agreement's validity, Ethington's counsel made a strategic decision aimed at winning Ethington's and CSI's claim for damages based on First 1's alleged breach of the agreement. Rule 60(b)(6) does not allow Ethington to pursue his claims a second time based on an alternative argument he failed to raise during trial.

### B.     The Validity of Ethington's Guaranty

Ethington also argues that he should not be held personally liable for CSI's breach of the Dealer Agreement because: (i) the agreement does not specifically set forth the "duties or obligations of an individual guarantor" and (ii) the agreement does not comply with the requirements of K.R.S. § 371.065. [Record No. 150-1, pp. 19-23] Ethington presents no

legal authority to support his position that additional language was required to bind him as a guarantor.  And in its Findings of Fact and Conclusions of Law, the Court addressed whether K.R.S. § 371.065 applied.  Therefore, Ethington is not entitled to relief under Rule 60(b)(6) based on these arguments.

Ethington argues that the guaranty is unenforceable because the Dealer Agreement "does not contain any agreement" between First 1 and Ethington as guarantor.  *Id.* at p. 19. According to Ethington, the fact that the words "Individual Guarantor" are printed on the agreement below his signature line is insufficient.  *Id.* at p. 20.  However, Ethington fails to cite to any authority in support of this assertion.  In fact, the Kentucky Court of Appeals has found a signatory liable as an individual guarantor in similar circumstances.  In *Discovery Mgmt. Servs., Inc. v. Fackler*, No. 2003-CA-002676-MR, 2005 WL 387018 at *2 (Ky. Ct. App. Feb. 18, 2005), the Kentucky Court of Appeals found Fackler individually liable where she was a named party to the contract and signed both as president of the corporation and as an individual.   The *Fackler* Court held that, "In the absence of ambiguity, courts will interpret contracts by assigning language its ordinary meaning."  *Id.*  The phrase "individual guarantor" underneath a separate signature line unambiguously indicates that the person who signs above that line (Ethington, in this case) intends to be held personally liable under the terms of the contract.

Ethington also argues that the guaranty was unenforceable because it failed to comply with K.R.S. § 371.065.  This statutory section provides, in part:

> (1) No guaranty of an indebtedness which either is not written on, or does not expressly refer to, the instrument or instruments being guaranteed shall be valid or enforceable unless it is in writing signed by the guarantor and contains provisions specifying the amount of the maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates.

Termination of the guaranty on that date shall not affect the liability of the guarantor with respect to:

(a) Obligations created or incurred prior to the date; or

(b) Extensions or renewals of, interest accruing on, or fees, costs or expenses incurred with respect to, the obligations on or after the date.

Essentially, "[t]he statute identifies three scenarios under which a guaranty is valid and enforceable: (1) the guaranty may be written on the instrument being guaranteed; (2) the guaranty may 'expressly refer to' the instrument(s) being guaranteed; or (3) the guaranty may specify the guarantor's maximum aggregate liability and the date the guaranty ends. Only one of these separate and independent provisions must be satisfied." *Buridi v. Leasing Group Pool II, LLC*, 447 S.W.3d 157, 172 (Ky. Ct. App. 2014); *accord Alliant Tax Credit Fund 31-A, Ltd. v. Murphy*, 494 F. App'x 561, 569 (6th Cir. 2012). Ethington argues that the Dealer Agreement does not meet any of the three options for a valid guaranty under § 371.065. [Record No. 150-1, pp. 21-23]

In the Findings of Fact and Conclusions of Law entered following trial, the Court outlined the standard for guaranty agreements under § 371.065. The undersigned concluded that, "[b]ecause the guaranty and signature are written on the Agreement, it is enforceable." [Record No. 104, p. 39] Ethington disagrees with this conclusion but once more offers no legal authority to support his argument. Instead, he simply states that, "[t]he Dealer Agreement does not constitute the 'instrument being guaranteed.'" [Record No. 150-1, p. 21] Rather, Ethington asserts that the guaranty actually applies to the unspecified automobile loans that First 1 will finance at a later date. *Id.* However, Kentucky courts have found a valid guaranty in comparable circumstances. For instance, in *Wheeler & Clevenger Oil Co., Inc. v. Washburn*, 127 S.W.3d 609, 610 (Ky. 2004), the Supreme Court of Kentucky found

-14-

the guaranty in issue was valid because it was set forth in the contract that established the terms of the defendant's line of credit with the plaintiff lender.  And in *Maxx Parts and Equip.-Ky. Inc., v. MSD Mining Co., Inc.*, No. 2003-CA-002189-MR, 2005 WL 1993902 at *1 (Ky. Ct. App. 2005), the Kentucky Court of Appeals upheld a guaranty written on the face of a contract that extended an unspecified amount of credit to the defendant mining company for the future purchase of supplies at the plaintiff's store.  The contract also required the defendant to pay interest on unpaid invoices.  *Id.*

Here, the Dealer Agreement contemplates the future extension of credit by First 1 to CSI and its customers.  While performance of the agreement undoubtedly required additional contracts, the Dealer Agreement governs the entire scheme and obligates CSI to pay back future credit extended by First 1.  The Dealer Agreement establishes a dealer account for CSI, and, similar to the facts in *Maxx Parts*, the agreement requires CSI to pay interest on any negative balance in its account.  By signing the signature line labeled "Individual Guarantor," Ethington guaranteed CSI's performance of the Dealer Agreement.

Importantly, Ethington admits that he failed to challenge the validity of the guaranty at trial.  [Record No. 150-1, p. 13]  As discussed above, the fact that his counsel was conflicted does not excuse this failure.  Ethington is responsible for his counsel's strategic decision to avoid the guaranty issue.  *See McCurry*, 298 F.3d at 595.  Accordingly, the circumstances surrounding the Court's decision to uphold the guaranty are neither extraordinary nor exceptional as required for relief under Rule 60(b)(6).

### C.      Ethington's Competence

Ethington also argues that this Court should vacate the amended judgment because his "memory loss rendered him an incompetent witness."  [Record No. 150-1, pp. 27-31]

Without his testimony, he argues that no competent proof was presented at trial to establish that he signed the agreement. *Id.* at p. 29. Because Ethington's alleged memory problems do not rise to the level of incompetence, this argument also fails to entitle him to Rule 60(b)(6) relief.

> Rule 601 of the Federal Rules of Evidence states:

> Every person is competent to be a witness unless these rules provide otherwise. But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision.

> The Sixth Circuit has observed that "the Federal Rules of Evidence strongly disfavor barring witnesses on competency grounds due to mental incapacity." *United States v. Phibbs*, 999 F.2d 1053, 1068 (6th Cir. 1993). A trial court will presume that a witness is competent to testify so long as he "appreciates his duty to tell the truth, and is minimally capable of observing, recalling, and communicating events." *Id.* at 1070. *See also City of Covington v. O'Meara*, 119 S.W. 187, 189 (Ky. 1909) ("One who is so insane that he does not comprehend the obligation of an oath, or who cannot give a correct or rational account of the matters which he has seen or heard in reference to the questions at issue, is deemed not a competent witness. When one is offered as a witness who appears to be of age and capacity to testify, the presumption as to his competency attaches."). Rule 602 of the Federal Rules of Evidence does require a witness have personal knowledge of the matter to which he intends to testify. Accordingly, the court may deem a potential witness incompetent if he is "impaired to the point that he would not be able to satisfy the 'personal knowledge' requirement of Rule 602." *United States v. Ramirez*, 871 F.2d 582, 584 (6th Cir. 1989).

> Ethington has not shown that he did not appreciate his duty as a witness to tell truthfully, and his testimony at trial and during his prior deposition indicates that he was at

least "minimally capable of observing, recalling, and communicating events."  *Phibbs*, 999 F.2d at 1070.  Ethington did testify that he had memory problems, but he also testified that he took medication to address these problems.  [Record Nos. 56-1, p. 4 and 90, p. 19]  Ethington repeatedly confirmed that the signature on the Dealer Agreement was his, indicating that he had personal knowledge of the matter.  [Record Nos. 56-1, p. 9 and 90, p. 18]  The Court's Findings of Fact and Conclusions of Law acknowledge that "Ethington does not recall what led up to the signing or why he was required to guarantee CSI's obligations to First 1." [Record No. 104, p. 19]   Nevertheless, Ethington's uncertainty did not overcome the presumption that he was competent to testify.  The Court heard his testimony, weighed it for what it was worth, and ultimately concluded that he did, in fact, sign the agreement as he testified.  *Id.* at p. 5.  The Court also considered Ethington's competency prior to trial when his counsel raised the issue in a motion to strike.  [Record Nos. 52 and 75]

Ethington seeks to challenge the Court's earlier finding of competency by submitting the affidavit of his wife, Mary Faye Ethington ("Mary").  [Record No. 150-2]   In the affidavit, Mrs. Ethington states that her husband "has suffered from short term memory loss and confusion for several years.   As a result, he has difficulty recalling events and recollecting facts."  *Id.*   She also avers that Ethington did not remember that he had been through a trial.  *Id.*  Nevertheless, Ethington's wife's explanation of the state of his memory nineteen months after trial is not dispositive.  Ethington has offered no proof showing that, at the time of trial, his memory problems were so pervasive that his testimony should have been precluded.

### D.      Ethington's Counsel

Finally, Ethington claims that the judgment should be vacated because he received ineffective assistance of counsel.  [Record No. 150-1, pp. 31-34]  Ethington contends that his counsel was conflicted, failed to obtain his informed consent for the conflict, failed to meaningfully participate in the proceedings, and failed to appraise him of his right to object to garnishment of his Social Security benefits.  *Id.*  However, civil litigants are not entitled to effective assistance of counsel, and Ethington's counsel's alleged conflict and claimed ineffective assistance is not sufficiently egregious to meet the high standard for relief under Rule 60(b)(6).

The Sixth Amendment to the United States Constitution secures a criminal defendant's right to effective legal representation.  *Gideon v. Wainwright*, 372 U.S. 335, 343 (1963).  Nonetheless,

> It is well-settled that there is no constitutional or statutory right to effective assistance of counsel in a civil case.  *See, e.g., Friedman v. Arizona,* 912 F.2d 328, 333 (9th Cir.1990); *Glick v. Henderson,* 855 F.2d 536, 541 (8th Cir.1988).  Thus, litigants in a civil proceeding may not attack an adverse judgment on the grounds of ineffective assistance of trial counsel. . . .  Instead, the appropriate remedy is a malpractice action against the attorney.

*Keenan v. Parker*, 23 F. App'x 386, 386 (6th Cir. 2001).  Accordingly, Ethington is barred from seeking relief from the civil judgment entered herein based on his attorney's alleged misconduct.  As discussed earlier, a civil litigant is charged with selecting his legal representative, and once he has done so, he is generally bound by that representative's actions.  *See Pioneer,* 507 U.S. at 396.  *See also McCurry*, 298 F.3d at 595.  Ethington's complaints that one of his attorneys failed to meaningfully participate in the trial and then

failed to inform him about his garnishment rights are matters that might be raised in an action for legal malpractice action, but not on a motion for relief under Rule 60(b)(6).

Occasionally, courts have found exceptional or extraordinary circumstances sufficient for Rule 60(b)(6) relief where an attorney's conduct was particularly egregious. *See Travelers*, 479 F. App'x at 696 ("Appellants correctly note that courts occasionally deem attorneys' misconduct sufficiently egregious to warrant post-judgment relief for their abused clients."). In support of his attorney misconduct argument, Ethington cites *Marderosian v. Shamshak*, 170 F.R.D. 335 (D. Mass. 1997). [Record No. 150-1, p. 34] In *Marderosian*, the plaintiff brought claims arising from his termination as a police officer against members of the town's board of selectmen and Shamshak, the town's former police chief. *Id.* at 336. The town's attorney, Capone, represented Shamshak and the board of selectmen at trial. *Id.* at 337. After trial, Shamshak sought relief under Rule 60(b)(6) from the jury's punitive damages award based on his counsel's conflict of interest. *Id.* Not only had Capone simultaneously represented both defendants, but he also had advised Shamshak prior to the lawsuit that he could terminate the plaintiff without holding a hearing. *Id.*

Capone failed to raise his earlier legal advice as a defense on Shamshak's behalf before the jury. *Id.* at 338. In deciding that Shamshak was entitled to relief under 60(b)(6), the *Marderosian* Court relied on the standard from *Gordon v. Norman*, 788 F.2d 1194, 1198 (6th Cir. 1986), where the Sixth Circuit held that where an actual conflict exists, "prejudice would be presumed only if the defendant demonstrated that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." The *Marderosian* Court ultimately concluded "[i]t is inconceivable that

independent counsel would not have elicited from Chief Shamshak that in addition to his own opinion, he also relied on advice of Town Counsel." *Id.* at 341.

Like *Marderosian*, dual representation of Ethington and CSI created an actual conflict of interest for Ethington's counsel. Nevertheless, this case is easily distinguished from the remaining facts in *Marderosian*, and application of the second prong of *Gordon* precludes Ethington from relief under Rule 60(b)(6) based on this argument. Ethington contends that his counsel could have argued that the guaranty was invalid or could have continued to argue that he was incompetent to testify. However, as discussed above, those arguments were unlikely to succeed at trial. Ethington's counsel did not act unreasonably by abandoning the incompetency argument after the Court denied the motion to strike Ethington's deposition testimony. The Court based its verdict on evidence that Ethington signed the Dealer Agreement and review of the Dealer Agreement itself. Even independent legal counsel would have been hard-pressed to rebut such compelling proof that the guaranty was valid and enforceable against Ethington.

The facts of this case are much more similar to those in *Alling v. Am. Tool & Grinding Co., Inc.*, 96 F.R.D. 221 (D. Colo. 1982). In *Alling*, 96 F.R.D. at 223, the judge agreed with the defendants that their counsel had a clear conflict of interest in representing all of them simultaneously. Their counsel also failed to advise them of the conflict or obtain their informed consent for his continued representation. *Id*. Nevertheless, the judge denied them relief under Rule 60(b)(6), reasoning that,

> [w]hen reviewed from the perspective of the plaintiffs or from the bench, it appeared throughout the trial that the defendants had adopted a strategy of common defense. Such a strategy is not uncommon. I am not inclined to say that any one of the defendants would have been better off by breaking away

from the denial of any wrongdoing and attempting to defend by pointing the finger at co-defendants.

…

Granting the defendants relief under the circumstances of this case would cause grave injustice to the several plaintiffs.  It would not be possible for an opposing party to discover in advance of trial the particular arrangements which have been made between the opposing parties and their counsel.  The nature of the relationship and the theories of defense and trial tactics are clearly privileged.

*Id.* at 224-25.

Likewise, Ethington and CSI pursued a common defense at trial.  This Court is not convinced that Ethington would have been better situated had he pursued a different defense.  Additionally, First 1, who would not have been privy to the opposing parties' conflict of interest discussions or lack thereof, would be greatly prejudiced if the Court granted the relief requested.

## IV.

To retry First 1's claims against Ethington would require reconsideration of evidence generated three to seven years ago.  Ethington's motion for relief under Rule 60(b)(6) will be denied because he has not demonstrated exceptional or extraordinary circumstances, his claims lack merit, and to grant the relief he requests would unfairly prejudice First 1.  For the foregoing reasons, it is hereby

**ORDERED** that Third-Party Defendant Donnie Ethington's motion for relief under Rule 60(b)(6) of the Federal Rules of Civil Procedure [Record No. 150] is **DENIED**.

This 29th day of October, 2015.



**Signed By:**

**_Danny C. Reeves_** DCR

**United States District Judge**